Filed 2/17/26  Estate of Page CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| Estate of ALBERT PAGE, Deceased. | B329985 c/w B332530 (Los Angeles County Super. Ct. No. BP029261) |
| EMMA ALEXANDER, as Executor, | |
| Petitioner and Respondent, | |
| v. | |
| WYESTHER PAGE, | |
| Objector and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Brenda J. Penny, Judge.  Affirmed.

Gordon | Gordon | Lawyers, Errol J. Gordon, and Christiaan J. Gordon for Objector and Appellant.

Law Office of George E. Omoko and George E. Omoko for Petitioner and Respondent.

—————————————

Wyesther Page's husband, Albert Page, died in 1994, leaving a recently executed will naming a friend and neighbor, Emma Alexander, as the executor and sole beneficiary of his estate. In 1995, the probate court admitted Albert's will to probate over Wyesther's objection.[1] The subject of the dispute here is a Los Angeles residence Albert acquired before his marriage to Wyesther that Wyesther claims was transmuted to community property that passed to her automatically at Albert's death. Alexander maintains the 1993 grant deed transferring title to Albert and Wyesther as joint tenants was forged or the product of undue influence or fraud, and that the residence was part of the estate. In 1995, the court took off calendar Wyesther's petition for an order confirming her right to the residence as spousal property and informed Wyesther that she could reset the petition for trial with the clerk. Wyesther did not do so.

Two decades later, in 2016, the court ordered Alexander to show cause as to her failure to close the estate. Alexander informed the court that ownership of the residence, which Wyesther continued to control, still needed to be resolved. In 2021, the court granted Alexander's petition under Probate Code section 850 for an order directing the residence's transfer to the estate as property of the estate. In 2023, after Alexander sought to close the estate, Wyesther made her first appearance since the case effectively restarted in 2016 and moved under Code of Civil Procedure section 473.5[2] to set aside the order granting

---

[1]     We refer to Albert and Wyesther by their first names for convenience and clarity. No disrespect is intended.

[2]     Undesignated statutory references are to the Code of Civil Procedure.

Alexander's petition, arguing she had not received actual notice of the petition before it was heard.  The court denied the motion, determining Wyesther was not entitled to relief under section 473.5 because there was no default or default judgment to set aside.  Wyesther then filed a motion to restore her spousal property petition, citing the court's 1995 order allowing the petition to be reset.  The court denied this motion as well, explaining Wyesther had premised her motion on the same grounds as the previously denied motion to set aside.

Wyesther appeals from the orders denying her motions to set aside and to restore her spousal property petition.  We affirm each order.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Albert Passes Away, and the Probate Case Commences*

Albert was married to his prior wife for approximately 50 years until she passed away in 1985.  The following year, Albert married Wyesther.  The couple primarily lived together in the Los Angeles residence that Albert had acquired before their marriage.  In January 1994, Albert executed a will that named Alexander as the intended executor and the sole recipient of all his tangible personal property and all other real and personal property via a residual clause.

Albert passed away in May 1994.  In June 1994, Alexander petitioned for admission of the will to probate.  Wyesther objected on grounds that the will was a product of fraud, duress, undue influence, or incapacity.  In December 1994, Wyesther filed a petition to confirm she was entitled to the residence as the surviving spouse without need for probate procedures.  Wyesther contended that, in December 1993, Albert converted the

3

residence to community property by executing a grant deed transferring title to himself and Wyesther as joint tenants. Alexander opposed the spousal property petition and argued the grant deed was forged or a product of undue influence or fraud.

In October 1995, after a trial, the probate court granted Alexander's petition, admitted the will to probate, and appointed Alexander as the will's executor. The court denied Wyesther's will contest for "insufficient credible evidence submitted to prove undue influence or fraud and deceit." The court also took Wyesther's spousal property petition off calendar and indicated she could reset the petition and schedule a trial date with the clerk.

Wyesther appealed the order admitting the will to probate. This court affirmed, explaining Wyesther had presented a threadbare record on appeal that was insufficient to demonstrate any error by the probate court.

After the remittitur issued in 1998, Alexander petitioned under Probate Code former section 9860 (the predecessor to Probate Code section 850) for an order directing transfer of the residence to the estate as sole property of Albert to which Wyesther had no claim. Wyesther objected, contending the residence was community property by virtue of the grant deed and her making mortgage payments prior to Albert's passing. The parties stipulated to the court denying Alexander's petition without prejudice and overruling Wyesther's objections. Alexander filed a second petition under former section 9860 in 1999. The record is unclear as to the resolution of this petition, but there is no indication it was granted. From there, for reasons also unclear in the record, the case went dormant for almost two decades.

4

B.    *The Probate Case Restarts, and the Court Grants Alexander's 2020 Petition*

In January 2016, the probate court issued an order for Alexander to show cause as to her failure to timely close the estate. In a written status report, Alexander informed the court that Wyesther had been unlawfully exercising control and possession of the residence. She sought more time to resolve the residence's ownership before closing the estate. Alexander mailed notice of the status report and a related hearing to Wyesther both at the residence and at a separate house Wyesther owned in Compton, as well as to her last counsel of record. The court granted Alexander's request to continue administration of the estate, and proceedings resumed, albeit without much forward momentum aside from Alexander's updates to the court that the status of the residence as an estate asset remained unresolved. Wyesther did not appear at the status report hearing and would not appear again in the case until January 2023.

In February 2020, Alexander filed a petition for an order transferring title of the residence to the estate under Probate Code sections 850, 855, and 859 (the 2020 petition). Alexander asserted Wyesther continued to claim an interest in the property based on the grant deed transferring the residence to herself and Albert as joint tenants. Alexander alleged Wyesther engaged in fraud and conversion to procure the grant deed and requested the deed's cancellation. Alexander also requested transfer of Albert's cemetery plot to the estate.

Alexander mailed notice of the 2020 petition and hearing on the petition to Wyesther at the residence. The hearing was continued several times because of the COVID-19 pandemic and at the request of Alexander's counsel, and Alexander provided the

5

same notice for each continuance. In December 2020, Alexander attempted to personally serve Wyesther with notice at a residential address in Tulare. The registered process server's declaration of due diligence describes six attempts across a two-week period with no contact made with anyone at the address. In April 2021, the court granted permission for Alexander to provide notice by publication.[3] Alexander submitted proof of such notice in April and May 2021.

In August 2021, the court held a hearing on Alexander's 2020 petition, at which only Alexander's counsel appeared. The court noted Alexander gave notice by publication to Wyesther. The court then granted the petition, finding all allegations in the petition to be true. The court ordered Wyesther to transfer title to the residence to the estate and instructed the clerk to sign a grant deed for the property on behalf and in place of Wyesther. The court also ordered the cemetery plot to be transferred to the estate.

In September 2022, Alexander filed a petition for final distribution, explaining the estate was ready to be closed and that its assets—the residence and cemetery plot—should be distributed to her pursuant to the terms of the will. Alexander served Wyesther with notice of the petition and hearing at the residence.

---

[3] California Rules of Court, rule 7.52(c) provides that "[i]f a person entitled to notice [in a probate proceeding] cannot be located after diligent search, the court may prescribe the manner of giving notice to that person or may dispense with notice to that person." The petitioner must file a declaration of due diligence that satisfies the requirements of rule 7.52(a).

6

Before that hearing was held, in January 2023, Wyesther appeared in the case for the first time since it effectively restarted in 2016 when she filed a substitution of attorney request that indicated she had been representing herself before the substitution. Wyesther also filed an opposition to the final distribution petition. She asserted that, since her unsuccessful appeal, she had been unaware of any proceedings in the case until her son attempted to pay property taxes on the residence in December 2022 and learned through a subsequent title search that the property had been transferred to the estate. Wyesther stated she had been renting the residence to a tenant since 2006 and since 2007 she had primarily resided at the address in Tulare where personal service had been attempted. Wyesther asked the court to deny the final distribution petition.[4]

C.      *Wyesther's Motions To Set Aside and To Restore Her Spousal Property Petition*

In March 2023, Wyesther moved under section 473.5 to set aside the August 2021 order on the 2020 petition. Wyesther asserted she had no "actual notice" of the 2020 petition or petition hearing until December 2022. In an accompanying declaration, Wyesther declared she had never received any notice of the petition and had not lived at the residence since her husband died in 2004. She stated that Alexander knew that a tenant lived at the residence because Alexander lived very close by. Wyesther stated she "did nothing to evade service" and "had no knowledge that this probate has continued over the years."

_____

[4]      Proceedings on the final distribution petition are currently stayed by the probate court pending this appeal.

Wyesther also submitted a proposed objection and response to the 2020 petition, in which she admitted and denied allegations and asserted statute of limitations and laches defenses.

In April 2023, after briefing and a hearing, the court denied Wyesther's motion. The court concluded Wyesther was improperly seeking relief under section 473.5 because although the order granting the 2020 petition "may have had an unfavorable outcome to [Wyesther], this did not result in a default nor a default judgment." The court further explained that even if it construed Wyesther's motion as seeking relief under section 473, subdivision (b), for mistake, inadvertence, surprise, or excusable neglect, the motion would be time-barred under that provision. The court also determined Alexander had provided sufficient notice of the hearing on the 2020 petition under the circumstances, which included Wyesther's failure to keep her current address on file with the court. Wyesther timely appealed the order denying her motion.[5]

In June 2023, Wyesther filed a "motion to restore spousal property petition to [the probate] court's calendar." She cited the court's 1995 order taking her spousal property petition off calendar and sought to act on the court's direction in that 1995 order to reset the petition for purposes of resolving her rights to estate assets, including the residence. She asserted her request was timely and proper under section 473.5, again noting her lack of actual notice of the proceedings on the 2020 petition.

After briefing and a hearing, the court denied the motion. The court concluded the motion was either a successive motion to

---

[5]    Alexander also filed a notice of appeal, but her cross-appeal was dismissed after she failed to cure a default.

set aside that raised the same arguments as the previously denied motion to set aside or an untimely motion for reconsideration. Wyesther timely appealed the order denying her motion.

## DISCUSSION

A.  *Appealability*

Appeals in probate matters are limited in order to prevent unreasonable delay in the distribution and closing of estates. (*Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1126; *Varney v. Superior Court* (1992) 10 Cal.App.4th 1092, 1098.)  An appeal can be taken only from an order made appealable by the Probate Code.  (Code of Civ. Proc., § 904.1, subd. (a)(10); *Godoy v. Linzner* (2024) 106 Cal.App.5th 765, 773; *Hudson v. Foster* (2021) 68 Cal.App.5th 640, 660.)  Probate Code sections 1300 through 1304 list appealable probate court orders, and these provisions are " 'exclusive.' " (*Estate of Stoddart*, at pp. 1125-1126.)

Wyesther appeals from the denial of her motion to set aside the August 2021 order on the 2020 petition and the denial of her motion to restore her spousal property petition.  As discussed below, Wyesther's motion to restore seeks to challenge matters resolved in the probate court's ruling on the 2020 petition and thus effectively functions as a second motion to set aside the August 2021 order.

An order denying a motion to set aside a judgment or order is not listed as an appealable order under the Probate Code. (Prob. Code, §§ 1300-1304.)  It follows that such an order generally is not appealable.  (See *In re Conservatorship of Harvey* (1970) 3 Cal.3d 646, 652; *In re Estate of O'Dea* (1940) 15 Cal.2d

637, 639; *In re Estate of Allen* (1917) 175 Cal. 356, 357; *Estate of Mohr* (1962) 208 Cal.App.2d 799, 801-802.)

As a narrow exception to this general rule, an appeal may be taken from the denial of a motion to set aside where the underlying order is entered ex parte with no notice to the appealing party, thus leaving the party without an opportunity to appeal directly from the order. (*Estate of Baker* (1915) 170 Cal.578, 582-583; *Kalenian v. Insen* (2014) 225 Cal.App.4th 569, 576-579; *Estate of Cahoon* (1980) 101 Cal.App.3d 434, 438.) In this situation, "such an order issued without notice to an appealing party necessitates the filing of a motion to set aside the [order,]" and the denial of the motion "is deemed appealable." (*Kalenian*, at p. 578; accord, *Estate of Baker*, at pp. 582-583 ["These cases, of course, arise when the motions are made after the time limited by law for the appeal has expired. The moving parties, for the indicated reasons, have not been able to avail themselves of the right to appeal. And only by this method can they be protected in this valuable right."].)

This exception fits here. Wyesther claims (and Alexander does not dispute) that Wyesther did not receive actual notice of the 2020 petition or the order granting the petition in her absence in time for a direct appeal. (See Prob. Code, § 1300, subd. (k) ["an appeal may be taken from" an order "[a]djudicating the merits of a claim made under" Prob. Code, § 850].) When Wyesther learned of the order, she promptly moved to have it set aside. Thus, given the circumstances of this case, the orders denying her motions are appealable.

B.    *The Probate Court Properly Denied Wyesther's Motion To Set Aside*

Section 473.5, subdivision (a), provides, "When service of a summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against the party in the action, the party may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action."  Such a motion must be filed within the earlier of two years after entry of a default judgment or 180 days after notice of entry of the default or default judgment is provided.  (*Ibid.*)  Along with the motion, the moving party must submit a copy of the proposed responsive pleading as well as "an affidavit showing under oath that the party's lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect."  (*Id.*, subd. (b).)  If the court finds a motion is timely made and the party's "lack of actual notice . . . was not caused by the party's avoidance of service or inexcusable neglect, it may set aside the default or default judgment on whatever terms as may be just and allow the party to defend the action."  (*Id.*, subd. (c).)

The statute generally applies where constructive notice was provided (e.g., to a household member or by publication) such that the default or default judgment is valid, but for some reason the moving party never received actual notice of the case.  (*California Capital Ins. Co. v. Hoehn* (2024) 17 Cal.5th 207, 215; see also *Olvera v. Olvera* (1991) 232 Cal.App.3d 32, 40 ["[S]ection 473.5 reflects the understanding that if any form of service of summons does not result in actual knowledge, fundamental fairness may require that a subsequent default be set aside."].)  This is in contrast to a situation where the defendant has not

11

been properly served at all, in which case the default judgment is void and may be set aside at any time under section 473, subdivision (d). (*California Capital Ins. Co.*, at p. 215.)

We review the denial of a motion for relief under section 473.5 for abuse of discretion. (*Rios v. Singh* (2021) 65 Cal.App.5th 871, 885; *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 861.)

The probate court did not abuse its discretion in denying Wyesther's section 473.5 motion. The statute authorizes relief from a "default or default judgment" when "service of a summons has not resulted in actual notice in time to defend the action." (§ 473.5, subd. (a).) A default and then a default judgment are obtained after a defendant, having been served with the summons, does not respond to the complaint commencing the lawsuit within the time permitted by statute. (See § 585 [procedures for obtaining a default and default judgment].) "Entry of a defendant's default terminates that defendant's rights to participate in the litigation [citation], and the case ends when default judgment is entered [citation]." (*Garcia v. Politis* (2011) 192 Cal.App.4th 1474, 1479.) No default or default judgment was ever entered against Wyesther in this action. And without a default or default judgment to set aside, section 473.5 has no application.

Wyesther contends the statutory terms "default" and "default judgment" should be interpreted broadly to capture outcomes that have the same "legal and practical effect." She describes the proceedings on the 2020 petition as a standard civil action, pointing out the petition resembled a complaint by pleading causes of action and requesting damages and attorney's fees and the notice of hearing on the petition resembled a

12

summons. Wyesther asserts the probate court's ruling on the petition was equivalent to a default or default judgment that can be set aside under section 473.5.

However, the 2020 petition was not brought as a standalone action but rather was part of an ongoing probate case in which Wyesther actively participated. Even though the action went dormant between 1999 and 2016, it never ended. When proceedings began again in 2016 upon the court's order to show cause, it was the same probate case that Wyesther had already appeared in to contest the will and assert rights to specific property as the surviving spouse. Wyesther provides no authority suggesting any order granting an uncontested motion or petition should be treated as a default or default judgment for purposes of section 473.5. In fact, courts have rejected arguments for application of section 473.5 to uncontested judgments and orders generally. (See *Conseco Marketing, LLC v. IFA & Ins. Services, Inc.* (2013) 221 Cal.App.4th 831, 844 [holding § 473.5 not properly relied on to seek vacation of judgment under the Sister State Money Judgments Act, where judgment was entered after defendant failed to offer a defense due to its lack of notice, because a sister state judgment is "not a default or default judgment"]; *Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 203 [uncontested action for renewal of judgment was not subject to § 473.5 because "[§] 473.5 is a procedural remedy by which a default or default judgment may be set aside; it is not a defense to an action on a judgment"].)

In the analogous context of section 473, subdivision (b), which authorizes relief from a "default, default judgment, or dismissal" in a case of inexcusable neglect of an attorney, courts have generally adopted a strict interpretation of those terms and

13

not allowed relief from procedural equivalents of defaults or default judgments.  (See *Rodriguez v. WNT, Inc.* (2025) 116 Cal.App.5th 791, 803-805 [agreeing with majority view that "the term 'default' as used in [§] 473[, subd.] (b) refers narrowly 'to a "default" entered by the clerk (or the court) when a defendant fails to answer a complaint, not to every "omission" or "failure" in the course of an action that might be characterized as a "default" under the more general meaning of the word' "]; see also *The Urban Wildlands Group, Inc. v. City of Los Angeles* (2017) 10 Cal.App.5th 993, 1000-1001 [disapproving, as inconsistent with established principles of statutory construction, prior decisions of the same court that were part of a "very small progeny" of cases allowing relief from default judgment equivalents]; *Las Vegas Land & Development Co., LLC v. Wilkie Way, LLC* (2013) 219 Cal.App.4th 1086, 1092 [agreeing with "the more recent line of case authority" that § 473, subd. (b), "should be limited to the narrow class of cases in which a default judgment or a dismissal has been entered"]; *Vandermoon v. Sanwong* (2006) 142 Cal.App.4th 315, 321 [rejecting proposition that a judgment resulting from an uncontested trial conducted in the defendant's and his counsel's absence was the " 'procedural equivalent of a default' " and thus subject to § 473, subd. (b)]; but see *Avila v. Chua* (1997) 57 Cal.App.4th 860, 867-868 [holding § 473, subd. (b), applied where a dismissal was entered after the court struck the plaintiff's tardy opposition to the defendant's motion for summary judgment and entered judgment for the defendant, because the case was "directly analogous to a default judgment" and the plaintiff had "lost his day in court due solely to his lawyer's failure to timely act"], disapproved by *The Urban Wildlands Group, Inc.*, at p. 1000.)  Section 473, subdivision (b),

also separately authorizes relief from a "judgment, dismissal, order, or other proceeding" in a case of the party's mistake, inadvertence, surprise, or excusable neglect.  In other words, the Legislature knows how to authorize relief from judgments and orders more broadly, and its decision to provide relief only from defaults and default judgments under section 473.5 must be given meaning.

C.      *The Probate Court Properly Denied Wyesther's Motion To Restore Her Spousal Property Petition*

In her spousal support petition, Wyesther asserted she was entitled to the residence because Albert executed a grant deed to convert the property to a joint tenancy with her.  The probate court rejected that claim when it resolved the 2020 petition, finding true Alexander's allegations that the grant deed was fraudulent and that the residence was property of the estate.  Thus, Wyesther's motion to restore her spousal support petition was, in substance, a second motion to set aside the court's August 2021 order on the 2020 petition.  Indeed, Wyesther cited section 473.5 as the legal authority for the requested relief in her motion to restore.[6]  Thus, the motion suffers from the same infirmity as the motion to set aside:  There was no default or default judgment entered against Wyesther that could be vacated.  Accordingly, the probate court did not abuse its discretion in

---

[6]      If the motion to restore is instead treated as a motion for reconsideration of the order denying her prior motion to set aside, Wyesther's appeal would have to be dismissed as taken from a nonappealable order.  (See *Estate of Stoddart, supra,* 115 Cal.App.4th at p. 1126 [order denying motion for reconsideration is not an appealable probate court order].)

15

denying Wyesther's motion to restore her spousal property petition.

## DISPOSITION

The orders denying Wyesther's motions to set aside and to restore her spousal property petition are affirmed.  Alexander shall recover her costs on appeal.


STONE, J.

We concur:


SEGAL, Acting P. J.


FEUER, J.

16